IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DELORES BROWN, as Parent and Legal Guardian of ALVIN PAYTON, JR., and DELORES BROWN individually<br><br>Plaintiffs,<br><br>v.<br><br>ANCORA PSYCHIATRIC HOSPITAL, NEW JERSEY DEPARTMENT OF HUMAN SERVICES, ALLAN BOYER, and JENNIFER VELEZ,<br><br>Defendants. | Civil No. 11-7159 (RMB/KMW)<br><br>**MEMORANDUM OPINION & ORDER** |

**BUMB**, United States District Judge:

Plaintiff Delores Brown ("Brown"), proceeding pro se, initially filed this action on behalf of her son, Alvin Payton, Jr. ("Payton"), an involuntarily committed patient at Ancora Psychiatric Hospital ("Ancora"). (Dkt. Ent. 1.) Upon a motion by Defendants Jennifer Velez, Esq., Allan Boyer, the New Jersey Department of Human Services ("DHS"), and Ancora (collectively, the "Defendants"), this Court dismissed the claims against DHS and Ancora but allowed the claims for prospective injunctive relief against the individual defendants to proceed. (Dkt. Ent. 23.) After obtaining counsel, Plaintiff Brown filed an amended complaint (the "Amended Complaint") on behalf of herself and her

1

son Payton (collectively, "Plaintiffs"), asserting claims for (1) violations of substantive due process rights under the Fourteenth Amendment (Count I), (2) violation of Section 504 of the Rehabilitation Act of 1973 (Count II),[1] (3) negligence for failure to properly train, supervise, and implement policies (Count III), and (4) medical malpractice (Count IV). (Dkt. Ent. 38.) Currently before the Court is Defendants' motion to dismiss the Amended Complaint. (Dkt. Ent. 42.) For the reasons set forth below, the Court grants Defendants' motion to dismiss.

**STATEMENT OF FACTS**

Plaintiff Payton suffers from PICA, a disorder that involves the consumption of substances with little or no nutritional value, and causes Payton to consume batteries and other metallic items. (Am. Compl. ¶¶ 14-15.) In 1993, Payton was involuntarily committed to Ancora, a New Jersey State hospital operated by DHS,

---

[1] Plaintiffs label Count II as "liability for violation of civil rights under 42 U.S.C. § 1983 and 42 U.S.C. § 2000d-7, section 504 of the Rehabilitation Act of 1973." (Am. Compl. at p. 8.) Section 2000d-7 simply effects a waiver of sovereign immunity for violations of Section 504, and does not provide any substantive rights. Similarly, "Section 1983 is merely a vehicle for vindicating violations of substantive rights found [in] the United States Constitution and certain federal statutes. There can be no 'violation' of § 1983." Gutin v. Wash. Tp. Bd. of Educ., No. 04-1947, 2007 WL 2139376, at *1 n.2 (D.N.J. 2007) (citing Brown v. Pa. Dep't of Health Emer. Med. Servs. Training Inst., 318 F.3d 473, 477 (3d Cir. 2003)). Violations of Section 504 of the Rehabilitation Act, however, are not actionable under Section 1983. See A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 805 (3d Cir. 2007). Accordingly, the Court interprets Count II as merely asserting rights under Section 504 pursuant to the statutory remedies set forth in that statute.

for treatment of this disorder. (Id. ¶¶ 8, 10.) Plaintiffs allege that the Ancora facility is not designed for PICA patients and thus Payton has been able to access batteries and other items, which he has ingested. (Id. ¶ 20.)

Shortly after Payton was committed to Ancora, he was prescribed Risperdal, an antipsychotic drug, which he continued taking until some point after the commencement of this action. (Id. ¶¶ 18-19, 28.) According to the Amended Complaint, Payton's disorder worsened while he took Risperdal and, over the last 19 years, Payton has undergone 24 operations to remove items that he has ingested. (Id. ¶¶ 20-22.)

Plaintiffs filed this action, seeking damages in the amount of $25,000,000 and prospective injunctive relief "in the form of building and staffing a fully equipped Ancora PICA Facility." (Id. ¶ 1.) Defendants have moved to dismiss the Section 1983 claims against DHS and Ancora, as well as the claims against Boyer and Velez seeking monetary damages, on grounds that these claims are barred by the Eleventh Amendment. They further contend that the state law causes of action are barred by the Eleventh Amendment and, in any event, these claims fail because Plaintiffs do not allege compliance with the notice requirements of the New Jersey Tort Claims Act (the "NJTCA"). Finally, Defendants argue that the Amended Complaint fails to state an actionable claim under Section 504 or for negligence and medical malpractice.

## I. Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sheridan v. NGK Metals Corp., 609 F.3d 239, 263 n.27 (3d Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

The Court conducts a three-part analysis when reviewing a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations omitted); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) ("[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.").

## II. Analysis

### A. The Eleventh Amendment Bars Most of the Section 1983 Claims.

In the Amended Complaint, Plaintiffs attempt to renew the

4

claims against all Defendants for violations of various substantive due process rights under the Fourteenth Amendment. However, the Court already addressed these claims in its prior opinion disposing of Defendants' motion to dismiss the Complaint. (See Opinion at 2-5, n.1 (construing Plaintiff's pro se Complaint as invoking Section 1983 to redress substantive due process rights under the Fourteenth Amendment).)

### i. Defendants DHS and Ancora

As discussed in this Court's prior opinion, DHS and Ancora are immune from suit under the Eleventh Amendment and, in any event, as a state department and agency, they are not "persons" amenable to suit under 42 U.S.C. § 1983. (See Opinion at 2-5.) Plaintiffs' Opposition cites cases that address qualified immunity, a defense that may be available to government officials for the performance of discretionary functions, but these do not alter the Court's Eleventh Amendment analysis. (See Pl.'s Opp. at 13-15); see also Clark v. Donahue, 885 F. Supp. 1164, 1166 (S.D. Ind. 1995). Thus, for the same reasons cited in its prior Opinion, this Court dismisses the Section 1983 claims against Defendants DHS and Ancora for lack of jurisdiction.[2]

---

[2] Plaintiffs suggest that the Court errs in phrasing its decision as a dismissal for lack of jurisdiction. However, as the Supreme Court has explained:

> The text of the Amendment itself is clear enough on this point: "The Judicial power of the United States shall not be construed to extend to any suit...." And

### ii. Defendants Boyer and Velez

As to the Section 1983 claims against Defendants Boyer and Velez, Plaintiffs have made this analysis needlessly opaque by failing to specify in the Amended Complaint whether they are suing Defendants Boyer and Velez in their individual or official capacities and their briefing does not provide much clarification. "[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent' . . . [and] therefore should be treated as suits against the State." Hafer v. Melo, 502 U.S. 21, 25 (1991) (internal citations omitted). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." Id.

It should be noted that Plaintiff Brown previously asserted these claims against Defendants Boyer and Velez in their official capacities. (See Opinion at 5 n.4.) Moreover, the allegations contained in the Amended Complaint strongly suggest that Plaintiffs bring these claims against the individual defendants in their official capacities. Nearly all of the allegations are

---

> our decisions since Hans had been equally clear that the Eleventh Amendment reflects "the fundamental principle of sovereign immunity [that] limits the grant of judicial authority in Art. III," (citations omitted).

Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 64 (1996).

6

generally asserted against "Ancora and DHS" (see, e.g., Am. Compl. ¶¶ 45, 46), "Ancora and DHS defendants" (id. ¶ 48), or "Ancora and DHS employees and representatives" (id. ¶¶ 40, 41; see also id. ¶¶ 36, 37), with no distinction between the state and individual defendants. The only allegations specifically directed to Defendants Boyer and Velez relate to their positions as CEO of Ancora and Commissioner of DHS, respectively. In fact, in describing the state and individual defendants, the Amended Complaint describes them as similarly possessing "responsibility" for "policy" and "oversight of the health, safety and welfare" of the patients (id. ¶¶ 10-13), further suggesting that Plaintiffs viewed these individuals merely as extensions of the State. In addition, Plaintiffs' Opposition discusses the constitutional obligations of "state agencies and officials (like Ancora, DHS, Allan Boyer, and Jennifer Velez)," but nowhere does it provide any clarification of the nature of Plaintiffs' suit. (Pl.'s Opp. at 15.) Accordingly, this Court construes the Amended Complaint as asserting claims against Defendants Boyer and Velez in their official capacities.[3] See Pena v. Div. of Child & Fam. Servs.,

---

[3] The Amended Complaint and Plaintiffs' memorandum of law in opposition to the motion to dismiss have been unhelpful to the Court in its analysis. Based on the allegations of the Amended Complaint, it is hard to see how a claim against the individual defendants in their personal capacities would be viable. See, e.g., Gaymon v. Esposito, No. 11-4170, 2012 WL 1068750, at *4-5 (D.N.J. Mar. 29, 2012). Thus, to the extent Plaintiffs intended to assert such claims against the individual defendants, they will need to seek leave from the Court to amend their complaint.

No. 08-1168, 2010 WL 3982321, at *5 (D.N.J. Oct. 8, 2010) (reviewing "course of proceedings" and concluding claims were brought against individual defendants in their official capacities).

Plaintiffs' Opposition attempts to assert additional allegations regarding Defendants Boyer and Velez, presumably to demonstrate their personal involvement in the alleged violations. Specifically, Plaintiffs claim these Defendants have "knowledge of and actively participated in the inadequate care, inadequate medical treatment and violating [sic]" of Payton's rights because they received an investigative report from the Department of Justice noting certain "deficiencies" in patient care. (Pl.'s Opp. at 16, 18.) Plaintiffs do not indicate when this report was purportedly received by Defendants. In any event, these allegations are not contained in the Amended Complaint and therefore will not be considered by the Court. Voneida v. Penn., 508 F. App'x 152, 155 (3d Cir. 2012) ("statements in a brief are not a substitute for the allegations in the complaint") (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 109 n.9 (3d Cir. 2002)); see also Seeds of Peace Collective v. City of Pittsburgh, 453 F. App'x 211, 215 n.3 (3d Cir. 2011) ("[W]e do not consider factual allegations made in [the plaintiff's] brief but not

---

The Court will not opine on whether any proposed amended claims will be sustained.

pleaded in the complaint.").

Thus, for the reasons explained in its prior Opinion, this Court will dismiss the claims against the individual defendants to the extent they seek monetary relief. (Opinion at 5-6.)

**B. Plaintiffs' State Law Claims Against All Defendants Are Barred by the Eleventh Amendment and the NJTCA.**

Here, again, the Court has already explained the reasons why it lacks jurisdiction over Plaintiffs' state law claims and will not reiterate its reasoning herein. (Opinion at 6-7.)

Even if these claims were not barred by the Eleventh Amendment, Plaintiffs have failed to allege compliance with the notice requirements of the NJTCA. The NJTCA requires a plaintiff bringing a claim against a public entity or public employee to give the relevant public entity notice of the claim within ninety days after the cause of action accrues. N.J. Stat. Ann. §§ 59:8-3, 59:8-8. "A plaintiff is 'forever barred' from recovering on the claim if she fails to comply with these filing requirements." Pena, 2010 WL 3982321, at *6. Further, the filing of a complaint is not a substitute for compliance with the notice requirements of the statute. Guzman v. City of Perth Amboy, 518 A.2d 758, 761 (N.J. Sup. App. Div. 1986).

Plaintiffs respond only that they are not required to follow the NJTCA notice provisions because the requirements do not apply to civil rights violations under Section 1983, claims brought under the New Jersey Civil Rights Act of 2004 (the "NJCRA"), or

9

claims brought under the New Jersey Law Against Discrimination (the "NJLAD"). However, Defendants have not moved to dismiss the Section 1983 claims on this ground, and Plaintiffs do not bring claims under either the NJCRA or the NJLAD. Furthermore, characterizing this action as a "civil rights action" does not permit Plaintiffs to bypass the notice requirements applicable to their state law claims. See Rolax v. Whitman, 53 F. App'x 635 (3d Cir. 2002) ("When an action in tort is initiated against a public entity or its employees, the complaint must also meet the requirements of the New Jersey Tort Claims Act, N.J.S.A. § 59:8-3[]."); Baklayan v. Ortiz, No. 11-3943, 2012 WL 3560384, at *5 (D.N.J. Aug. 15, 2012) ("All common law tort claims, including both negligence and intentional claims, are subjected to this notice requirement."). Plaintiffs' failure to allege compliance with the notice requirements as to their tort claims provides an independent basis for dismissal of these claims against all Defendants.[4]

**C. Plaintiffs Fail to State a Claim Under Section 504.**

Plaintiffs' claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, must be dismissed for failure to state a claim. As an initial matter, Defendants have consented to a

---

[4] Although Defendants also argued that the Amended Complaint fails to adequately plead the negligence and medical malpractice claims, this Court need not address these arguments as the claims must be dismissed on other grounds.

10

waiver of their sovereign immunity with respect to these claims through their voluntary receipt of federal funds.[5] 42 U.S.C. § 2000d-7(a)(1); M.A. ex rel. E.S. v. State-Operated Sch. Dist. of Newark, 344 F.3d 335, 347 (3d Cir. 2003) ("The Supreme Court held that § 2000d-7(a)(1) accomplished a valid and unambiguous waiver of the states' Eleventh Amendment immunity.") (citing Lane v. Pena, 518 U.S. 187, 198-200 (1996)); (see also Am. Compl. ¶ 2).

Section 504 of the Rehabilitation Act of 1973 forbids federally-funded state programs from discriminating against disabled individuals based solely on their disability. In relevant part, the statute states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving Federal assistance . . . ." 29 U.S.C. § 794(a). To establish a claim under Section 504, a plaintiff must prove: (1) that he is a disabled individual under the Rehabilitation Act; (2) that he is "otherwise qualified" for the position sought; (3) that he was

---

[5] It should be noted that claims under Section 504 could not be sustained against Defendants Boyer and Velez in their personal capacities because Section 504 applies only to those who receive federal financial assistance. See, e.g., Robinson v. Burlington Cnty Bd. of Social Servs., No. 07-2717, 2008 WL 4371765, at *6 (D.N.J. Sept. 18, 2008).

excluded from the position sought, denied the benefits of, or subjected to discrimination under the program or activity solely by reason of his disability; and (4) that the program or activity in question receives federal financial assistance. See Farrell v. A.I. DuPont Hosp. for Children of the Nemours Found., No. 04-3877, 2006 WL 1284947, at *3 (E.D. Pa. May 5, 2006) (citing Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1009 (3d Cir. 1995); Nathanson v. Med. College of Pa., 926 F.2d 1368, 1380 (3d Cir. 1991)). Defendants contend that Plaintiffs have failed to sufficiently plead the second and third elements. This Court agrees.

An "otherwise qualified" individual with disabilities "is one who can meet all of a program's requirements in spite of his handicap." See, e.g., Wagner, 49 F.3d at 1009. Other courts have recognized, "[t]he 'otherwise qualified' language, when considered in conjunction with the 'solely' language of the third condition, poses a formidable obstacle for anyone alleging discrimination based upon the failure to receive medical treatment for a birth defect." Johnson v. Thompson, 971 F.2d 1487, 1493 (10th Cir. 1992). "This is because, ordinarily, one seeking medical treatment as a result of a disability would not need the treatment but for the disability." Farrell, 2006 WL 1284947, at *7 (citing Wagner, 49 F.3d at 1009). Therefore, "[w]here the handicapping condition is related to the (conditions) to be treated, it will rarely, if ever, be possible

to say with certainty that a particular decision was 'discriminatory.'" United States v. Univ. Hosp., 729 F.2d 144, 157 (2d Cir. 1984). In determining whether an individual is "otherwise qualified", however, the Third Circuit has directed courts to focus not on the reason the individual sought access to the benefit but rather on the reasons why the individual was denied access. Wagner, 49 F.3d at 1010; see also Farrell, 2006 WL 1284947, at *7; Faustino v. A.I. DuPont Hosp. for Children of Nemours Found., No. 05-3002, 2006 WL 3227820, at *4 (E.D. Pa. 2006).

Here, Plaintiffs have failed to allege facts sufficient to show Payton was "otherwise qualified" for the treatment he received or that he was discriminated against solely because of his PICA disorder. At most, the Amended Complaint alleges that Payton suffered from PICA and that he has ingested numerous items during his commitment at Ancora. Plaintiffs then assert that "Ancora discriminated against Mr. Payton and other patients with pica [sic] disorders by denying them access to proper medical treatment, suitable medication, proper physical treatment facilities, and specialized medical staff and appropriate therapy." (Am. Compl. ¶ 4.) Despite this single conclusory statement that Payton was "den[ied] [] access" to proper treatment, the Amended Complaint's other assertions reflect not that he was denied access but that the treatment afforded to Payton was not good enough.

Most of Plaintiffs' allegations concern Payton's treatment with Risperdal, which they contend worsened Payton's disorder. These allegations demonstrate that the heart of Plaintiffs' Amended Complaint concerns allegations that Payton did not receive adequate medical treatment. (See also Am. Compl. ¶ 27 (Payton has suffered from the "prolonged use of the Risperdal medication and the improper medical treatment he received").) But, Section 504 is not designed as a vehicle for asserting medical malpractice actions. Indeed, numerous courts in this and other Circuits have dismissed claims under Section 504 for this very reason. See, e.g., Watson v. A.I. DuPont Hosp. for Children of Nemours Found., No. 05-674, 2007 WL 1009065, at *2 (E.D. Pa. Mar. 30, 2007) ("Defendants are correct insofar as they argue that § 504 should not be applied to medical treatment decisions."); Farrell, 2006 WL 1284947, at *6 ("While an examination of complex medical decisions is commonly made with respect to negligence claims, such medical decisions are removed from the purview of the Rehabilitation Act."); United States v. Univ. Hosp., 729 F.2d 144, 156-57 (2d Cir. 1984) ("The phrase ['otherwise qualified'] cannot be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning."); O'Guinn v. Nevada Dep't of Corr., 468 F. App'x 651, 652-653 (9th Cir. 2012) ("The district court correctly concluded that key elements of an ADA or RA claim cannot be reconciled with medical treatment decisions for the underlying

disability."); see also Iseley v. Beard, 200 F. App'x 137, 142 (3d Cir. 2006) ("Iseley does not claim that he was excluded from any program on the basis of his disability. Rather he claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions."); Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability." (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir.1996)));[6] Rosario v. Wash. Mem'l Hosp., No. 12-1799, 2013 WL 2158584, at *4, *13-14 (W.D. Pa. May 17, 2013) ("The rule that medical malpractice does not violate the ADA, which was announced in Bryant has been applied by the United States Court of Appeals for the Third Circuit.").[7]

---

[6] "In light of the similarities between . . . the ADA and [the Rehabilitation Act] and their implementing regulations, we construe and apply them in a consistent manner." Disabled in Action of Penn. v. Se. Penn. Transp. Auth., 635 F.3d 87, 91 (3d Cir. 2011) (quoting Penn. Prot. and Advocacy, Inc. v. Penn. Dep't of Pub. Welfare, 402 F.3d 374, 379 n.3 (3d Cir. 2005)); see also Defreitas v. Montgomery Cnty. Corr. Facility, No. 12-3305, 2013 WL 1878842, at *5 (3d Cir. May 7, 2013) ("The substantive standards for determining liability under the ADA and RA are the same, and we thus analyze them together." (citations omitted)).

[7] Wagner does not contradict the holding here. The Third Circuit in Wagner did not explicitly reject the district court's conclusion that medical treatment decisions are generally immune from scrutiny under Section 504. 49 F.3d at 1011-12. Rather, the court characterized the decision at issue there as involving administrative decisionmaking and not medical treatment. Id.; see also Watson, 2007 WL 1009065, at *2 (noting that Wagner did not expressly find Section 504 inapplicable to medical treatment decisions). Here, the Amended Complaint's allegations cannot be read as asserting a similar administrative decision.

Therefore, the Section 504 claims against all Defendants must be dismissed.

**ORDER**

FOR THESE REASONS, it is on this **7th** day of **August 2013**, hereby:

**ORDERED** that Defendants' partial motion to dismiss is GRANTED, and all of Plaintiffs' claims, except the Fourteenth Amendment claims against Defendants Boyer and Velez for prospective injunctive relief, are hereby DISMISSED; and it is further

**ORDERED** that DHS and Ancora are accordingly DISMISSED from this action, and the Clerk of Court shall therefore remove them from the docket caption.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge